**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIMBERLY R. FALLECKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:19-cv-01253-RJC |
| | ) | |
| UNITED STATES OF AMERICA and | ) | |
| GOODWILL COMMERCIAL SERVICES, | ) | |
| INC. | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge.

Presently pending before the Court are two Motions to Dismiss or, in the Alternative,

Motions for Summary Judgment filed on behalf of Defendant United States of America ("the

United States") (ECF No. 22) and, separately, Defendant Goodwill Commercial Services, Inc.

("GCS") (ECF No. 24). For the reasons stated herein, the motion filed on behalf of the United

States will be granted and we will decline to exercise pendant jurisdiction over the state court

claim against GCS. Accordingly, GCS's motion to dismiss will be denied as moot.

## I. Procedural and Factual Background

This personal injury action pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, *et*

*seq.* ("FTCA") arises out of an alleged slip and fall on a wet spot on the floor of a cafeteria at a

property leased by the United States Office of Personnel Management ("OPM"). On September

30, 2019, Plaintiff filed a Complaint against the United States. (ECF No. 1). On January 13, 2020,

Plaintiff filed a Motion to Amend/Correct Complaint and Add Defendant. (ECF No. 11). On January

13, 2020, Plaintiff filed an Amended Complaint ("Am. Comp."), the operative pleading, against the

United States and GCS. (ECF No. 12). The motions to dismiss with briefs in support were filed

1

on February 27, 2020 and March 13, 2020 (ECF Nos. 22-25), and Plaintiff's responses were filed

on March 17, 2020.  (ECF Nos. 27-30).  On March 24, 2020, the United States filed a reply brief.

(ECF No. 32).  The matter is now ripe for disposition.

The factual allegations are as follows.  On June 5, 2017, Plaintiff Kimberly Fallecker

"Plaintiff") slipped and fell on a wet spot on the floor in the cafeteria at an underground facility

situated at 1137 Branchton Road, Boyers, PA 16020.  (Am. Compl. ¶¶ 10, 13, 14, and 16).   The

facility is owned by Iron Mountain/National Underground Storage, LLC, and leased in

significant part by the OPM. The leased area is comprised of approximately 220,000 square feet

and made up of 27 individual rooms, walkways, storage areas, and other miscellaneous areas.

(See OPM Contract #1516C0011, attached as Exhibit A-1 to United States' Brief in Support,

ECF No. 23-2 (hereinafter "Maintenance Contract"), at 12, 22-25).  Plaintiff alleges defendants

had a duty to inspect, maintain, repair, control, supervise and oversee the at-issue premises and

to warn of and correct dangerous conditions on the premises.  (Am. Compl. ¶11).  Plaintiff

alleges she sustained personal injuries and is entitled to recover damages from the defendant

United States (Count I) for negligence pursuant to the FTCA and from defendant GCS (Count II)

pursuant to state law. (Am. Compl. ¶¶ 5, 17 and 22).

**The Maintenance Contract**[1]

In support of its motion, the United States has attached a declaration of Christopher B.

McNeish, the contract officer representative who was responsible for the negotiation of the

contract between GCS and OPM at the Iron Mountain facility. ("McNeish Decl.," ECF No. 23-

1).  From that declaration and the uncontroverted contract itself we learn the following

undisputed facts. On October 1, 2016, OPM entered into the Maintenance Contract with GCS.

---

[1] It is appropriate to consider the contract at this juncture because, as explained *infra*, a defendant has challenged our subject matter jurisdiction.

Pursuant to the contract, GCS is required to "provide all management, supervision, labor, materials, supplies, and equipment; and shall plan, schedule, coordinate, and assure the efficient performance of all custodial, warehouse, general maintenance and repair and assistance services. (Maintenance Contract at 6 and 12, § 2.2. Scope of Work). The period of performance for the Maintenance Contract is from October 1, 2016 until November 30, 2021. (*Id*. at 2). The areas being serviced under the Maintenance Contract included, *inter alia*, the "coffee bar, vending area, concession space, cafeteria entrance, and dining areas." (*Id*. at 25, § 2.10.1.17 Custodial Requirements). Because these areas are typically high traffic locations, the Maintenance Contract required "additional cleaning and policing" of these areas in order to "ensure these areas are clean and sanitary." (*Id*). Additionally, GCS was required to clean all floor surfaces. (*Id*. at 22-23, §§ 2.10.1.3 Entrances, Lobbies, Corridors, and Building Connecting Passageways, and 2.10.1.5 Hard Floors and Resilient Tile Floors).

The Maintenance Contract further provides that "[i]t is of the utmost importance that [GCS] use skilled and productive staffing in order to fully meet the required level of services specified in the Scope of Work. [GCS] shall be responsible for formulating a cleaning schedule that ensures that all quality and timeliness standards established by the government are attained." (*Id*. at 12, Section 2.3.1).  GCS was required to employ persons who were "thoroughly trained in custodial and warehouse type work." (*Id*. at 16, § 2.6.1.2 Qualifications of Personnel). Under the Maintenance Contract, 50% of the supervisors were required to "possess at least two (2) years of recent experience in directing cleaning type operations in a supervisory capacity," and the remaining 50% of supervisors were to have "at least one (1) year of recent experience in directing cleaning type of operations in a supervisory capacity." (*Id*. at 17, § 2.6.3.1 Qualifications of Supervisory Employees). Additionally, GCS was "solely responsible for deciding the total daily productive staff required to meet the performance outcomes of all

3

services." (*Id*. at 12, § 2.3.1 Contract Effort Required, General). In addition, GCS was required to create and submit a custodial training plan and certify that all its employees completed the custodial training. (*Id*. at 19, § 2.7.3 Personnel Training Requirements). Likewise, GCS was also required to create an inspection system that "includes use of a checklist, and the name of each management individual who will perform the inspections. The checklist must be signed and dated by the individual at the time the inspection is completed." (*Id*. at 21, § 2.9.1.2 Cleaning Standard/Outcomes).

To ensure GCS's full compliance with its obligation to provide custodial services for the leased space, OPM could daily and randomly inspect any area to evaluate GCS's performance and require that GCS correct any maintenance deficiency within one hour. (*Id*. at 12, 21, § 2.1 Background, § 2.10.1 Cleaning Standard/Outcomes). Failure to perform maintenance could be considered grounds for termination for default. (*Id*. at p. 21, § 2.9.1.3 Quality Control Plan).

The Maintenance Contract also addressed GCS's liability:

> [GCS] shall be liable and will indemnify and hold harmless the Government, its agents and employees, against all actions or claims for damages to persons, property, including death not caused by the fault, negligence, wrongful act, or wrongful omission of the Government, its agents, or employees. [GCS] shall be liable and will indemnify and hold harmless the Government, its agents and employees against all action or claims for damages to persons or property, including death arising or resulting from the fault, negligence, wrongful act, or wrongful omission of [GCS's] personnel in accordance with the Federal Tort Claim Act (28 U.S.C. 2671-2680).

(*Id*. at 31-32, § 2.13.8 Responsibility for Loss, Personal Injury of Contractor Personnel).

## II. Standard of Review

### A. Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.

4

1977)). The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists. *Brown v. Tucci*, C.A. No. 12-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. *Id.* In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's ... very power to hear the case" is at issue. *Id.* With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence. *Petruska*, 462 F.3d at 302 n.3; *see also Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortenson*, 549 F.2d at 891).

## III.  Discussion

### A. The United States' Motion to Dismiss on Grounds of Subject Matter Jurisdiction

The United States argues that the Court does not have jurisdiction over Plaintiff's claims at Count I because the duty of care and daily maintenance responsibilities has been delegated to GCS, an independent contractor. Plaintiff has alleged the accident was a direct and proximate result of the negligence of the United States. (Am. Compl. ¶22). The independent contractor exception to the Federal Tort Claims Act, excludes liability for injuries caused by independent contractors. *See* 28 U.S.C. § 1346(b); *U.S. v. Orleans*, 425 U.S. 807, 814-15 (1976). This

exception relates to common law agency principles and turns on whether the United States "controls the physical conduct of the contractor in performance of the contract." *Logue v. United States*, 412 U.S. 521, 527 (1973). In response, Plaintiff argues that the United States was responsible for the property in question and therefore can be held liable. Specifically, she argues the United States reserved the right to direct the contractor to provide cleaning services in selected parts of the building within specific timeframes and also reserved the right to clean the premises for itself during the normal hours of operation. Plaintiff further argues, without citation to the record or allegation in her pleading, the United States reserved the power to direct GCS employees to provide cleaning services in selected areas, such as the cafeteria, within specific timeframes, such as when a spill occurred. According to the Plaintiff, the responsibility lay with the government to ensure that the floor of the cafeteria was not hazardous when an individual, such as Plaintiff, was walking through during normal business hours.

The FTCA "operates as a limited waiver" of the sovereign immunity of the United States. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The FTCA waives sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the FTCA, the United States may be liable only "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *See* 28 U.S.C. § 1346(b). Of significance to the case at bar, the waiver of sovereign immunity carved out by the statute does not extend to the acts or omissions of a contractor with the United States. 28 U.S.C. § 2671; *United States v. Orleans*, 425 U.S. at 813-14 (holding that the statutory waiver expressly excludes independent contractors, as 28 U.S.C. § 2671 "defines Government employees to include officers and 'any federal agency' but excludes

'any contractor with the United States.'"). In other words, under the FTCA's "independent contractor exemption," the United States cannot be liable—indeed, is immune from liability—for injuries caused by the tortious conduct of a person or entity with which the United States (or one of its agencies) enters into contract. *Orleans*, 425 U.S. at 814.

For purposes of applying the FTCA's independent contractor exemption, "[t]he critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power 'to control the detailed physical performance of the contractor.'" *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997) (quoting *Orleans,* 425 U.S. at 814; *see also Logue v. United States*, 412 U.S. at 527-28 (holding the "critical factor" in determining whether an entity is a "contractor with the United States" under the FTCA's exemption from the limited waiver is the authority of the Government "to control the detailed physical performance of the contractor."). Accordingly, in *Norman*, the Third Circuit affirmed dismissal of an FTCA negligence claim arising from a slip-and-fall on water and ice in a federal courthouse building. *Norman*, 111 F.3d at 357. It reasoned that the independent contractor exemption applied because the government's contractor "was given broad responsibilities for daily maintenance" of the building, including the area where plaintiff allegedly fell. *Id.* Although the contract required that the contractor comply with the government's maintenance and inspection standards, it did not authorize the government to physically supervise the contractor's employees. *Id.* at *3. On this record, the District Court determined that the contractor was an independent contractor, thereby exempting the United States from liability and depriving the federal court of subject matter jurisdiction. *Id.* The Third Circuit affirmed the Rule 12(b)(1) dismissal, concurring that the contractor "was given broad responsibilities for daily maintenance" and the contract explicitly stated that "Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised." *Norman*, 111 F.3d at 357–58.

In similar cases where the United States had no involvement in directing or supervising the conditions of a premises, the independent contractor exemption applies. *Cannizzaro v. RIMROB Corp.*, No. CV 17-5931, 2019 WL 1529698, at *3 (D. N.J. Apr. 9, 2019), citing *Orleans*, 425 U.S. at 814-15; *see also Courts v. United States,* No. 15-7303, 2016 WL 4521687, at *13-14 (D. N.J. Aug. 29, 2016) (holding the United States was immune from suit in a slip-and-fall case under the independent contractor exemption where the lease agreement between the government agency and private building owner placed responsibility for cleaning and maintaining floors on the building owner and the record was devoid of evidence that the government agency supervised the day-to-day operations of the landlord or its janitorial services subcontractor); *Richardson v. Phila. Auth. for Indus. Dev.*, No. 03-2980, 2004 WL 1614882, at *12-13 (E.D. Pa. July 16, 2004) (granting summary judgment in a slip-and-fall action in favor of the United States based on sovereign immunity, finding that the FTCA's independent contractor exception applied where the contractor was responsible for clearing snow and ice from the sidewalk where the plaintiff fell).

"Broad governmental oversight is not sufficient to elevate a government vendor or service provider from independent contractor to employee status for the purpose of the FTCA." *Smiley v. Artisan Builders*, No. 13-7411, 2015 WL 3948044, at *4 (E.D. Pa. June 26, 2015). Rather, to make this determination, courts "have looked to the contract between the United States and the contractor to determine whether the United States exercised day-to-day supervision over the work of the contractor." *Dugan v. Coastal Indus., Inc.*, 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000). "Only convincing proof that a federal employee exercised supervisory control over an independent contractor's daily operations will subject the Government to liability for the negligence of its contractor." *Courts,* 2016 WL 4521687, at *3.

In *Smith v. Steffens*, 429 F. Supp. 2d 719 (E.D. Pa. 2006), plaintiffs were injured when the basement steps of a property owned by HUD collapsed under them. *Id.* at 720. The government sought a Rule 12(b)(1) dismissal and produced a copy of a contract with an independent contractor to "manage, market and oversee the sales closing activity" for the property. *Id.* The court found that, under the contract, HUD had turned over the day-to-day management of the property to the independent contractor. *Id.* at 721. The mere fact that the government retained some limited oversight power was not enough to deem the independent contractor an "employee" of the government. *Id.* at 722. On that record, the court found that the independent contractor exception applied and dismissed the complaint against the United States for lack of subject matter jurisdiction.  *Id.* at 723.

Here, contrary to Plaintiff's assertion, the contract clearly delegated to GCS *all* daily maintenance of all areas listed in the "Custodial Requirements," which included cleaning up spills in the cafeteria where Plaintiff alleges she suffered harm. *Id*. at §§ 2.2, 2.10, 2.9.1.2, and 2.10.1.17.  GCS had broad responsibility for the inspection and maintenance of the leased premises as an independent contractor. Maintenance Contract § 2.2 Scope of Work ("[GCS] shall provide the management, supervision, staffing, equipment and supplies necessary to provide custodial, warehouse and general maintenance services.").  GCS agreed it was responsible for creating a cleaning schedule for its employees, was responsible for implementing an inspection plan to ensure its employees performed their custodial duties, and was required to provide on-site supervision of its employees.  *Id.* at § 2.4.2, 2.9.1.2, and 2.6.1.1.  Further, GCS agreed it would be held liable for the acts and omissions of its employees. *Id.* at § 2.13.8.

Plaintiff's Amended Complaint does not allege the time of her fall, however, in her brief she states she fell at 4:45 P.M.  (ECF No. 28 at 5-6).   She then cites to § 2.4.2 of the Maintenance Contract wherein  GCS agreed to perform "hall corridor, floor cleaning, floor care

work, and thorough restroom cleaning . . . after 6:30 P.M."  This, she argues, supports the notion

that "it was the U.S.'s job to either have the floor cleaned or direct GCS employees to that

specific area" at the time of her fall.  *Id.*  In making this argument Plaintiff neglects to mention,

first, GCS's clear duty to inspect and supervise its employees' work and to provide  daily

maintenance of all areas listed in the "Custodial Requirements," as discussed *supra.* Moreover,

the clear wording of the Maintenance Contract at § 2.10.1.17 with respect to where Plaintiff

alleges she fell states that even during normal operational hours, GCS had a duty of care to

inspect and maintain the floors in the cafeteria in a safe condition: "Due to daily, heavy

personnel usage, *additional cleaning and policing shall be provided* to ensure these areas and

furniture therein are clean and sanitary. The finished floor area shall be maintained clean, free of

dirt, and present a uniform luster, free of spots, spillages and soil.") (emphasis added).  At all

times GCS had the broad responsibility to inspect and maintain the leased premises, and it was

GCS' duty to supervise its employees, not the duty of the United States.  Maintenance Contract

at § 2.2 Scope of Work ("[GCS] shall provide the management, supervision, staffing, equipment

and supplies necessary to provide custodial, warehouse and general maintenance services.").

GCS's representative/supervisor was required to be in the building site and available when work

was in progress, and support services were required Monday through Friday, including during

the hours, 6:00 a.m. through 6:00 p.m., which would include when Plaintiff alleges she fell.

Maintenance Contract §§ 2.3.2, 2.5.1

   Contrary to Plaintiff's assertion, OPM never reserved for itself maintenance duties,

although it did reserve other rights.   (Declaration of Christopher B. McNeish, ECF No. 32-1).

Furthermore, OPM exercising some supervision over GCS's maintenance to ensure compliance

with the Maintenance Contract does not invalidate the independent contractor exception. *Hsieh v.*

*Consol. Eng'g Servs., Inc.*, 569 F. Supp. 2d 159, 177 (D. D.C. 2008) ("[T]he government may

reserve the right to inspect the contractor's work and monitor its compliance with federal law

without vitiating the independent contractor exception.")

We find that based on the unambiguous language of the Maintenance Contract, Plaintiff

has not shown we have subject matter jurisdiction because defendant United States did not

consent to be sued for the negligence of the independent contractor herein.  *Young v. Marriott*

*Intern., Inc*., No. 97-2043, 1997 WL 700493, at *2 (E.D. Pa. Oct. 31, 1997).  Therefore,

Defendant United States of America's motion to dismiss will be granted  pursuant to Fed. R. Civ.

P. 12(b)(1) and Plaintiff's Amended Complaint will be dismissed against it with prejudice.

Having so found, we need not address the argument that Count I should be dismissed on the

ground Plaintiff has not stated a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**B.  State Law Claim against Defendant GCS at Count II**

Count II alleges negligence against Defendant GCS  arising under state law. As such, this

claim provides no independent basis for federal jurisdiction. Under 28 U.S.C. § 1367(c)(3), a

district court may decline to exercise supplemental jurisdiction if "the district court has

dismissed all claims over which it has original jurisdiction." The Supreme Court has held that

once federal claims are dismissed, a federal court should "hesitate to exercise jurisdiction over

state claims," unless circumstances justify this exercise. *United Mine Workers v. Gibbs,* 383 U.S.

715, 726 (1966); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements,* 101

F.3d 1492, 1504 (3d Cir.1996) ("once all federal claims have been dropped from a case, the case

simply does not belong in federal court."). This Court concludes that because Plaintiff's

remaining claim seeks relief only under state law, the federal district court's continuing exercise

of jurisdiction would not be appropriate. Therefore, in its discretion, pursuant to 28 U.S.C. §

1367(c)(3), the Court declines to exercise supplemental jurisdiction over the claims against GCS,

and accordingly will dismiss the claims without prejudice, so that they may be filed in an appropriate court  within the thirty-day time period provided by 28 U.S.C. § 1367(d).[2]

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is granted with prejudice as to Defendant United States of America because it is immune from liability under the FTCA's independent contractor exemption.  The remaining state law claim against Defendant Goodwill Commercial Services, Inc. at Count II is dismissed for lack of jurisdiction.

An appropriate Order of Court will follow.


Dated:  June 3, 2020                                           s/ *Robert J. Colville*
                                                              Robert J. Colville
                                                              United States District Judge

cc: All counsel of record via CM-ECF

---

[2] It appears Plaintiff is unable to pursue a claim against GCS in state court as she has failed to file a claim in state court against GCS within the requisite two (2) year statute of limitations. See 42 Pa.C.S.A. §5524.